**AGRISTOR CREDIT CORPORATION, a Colorado corporation, Plaintiff,**

v.

**Raymond BOYD and Joyce Boyd, Defendants.**

**Civ. A. No. 92–Z–1112.**

United States District Court, D. Colorado.

June 30, 1993.

---

Thomas R. Ripp, Wheat Ridge, CO, for plaintiff.

Denise K. Young, Denver, CO, for defendants.

## ORDER OF DISMISSAL

WEINSHIENK, District Judge.

The matters before the Court in this diversity case are Defendants Raymond Boyd And Joyce Boyd's Motion For Summary Judgment and Plaintiff's Motion For Summary Judgment.

Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LR 72.1A and 72.3, these motions were referred to Chief Magistrate Judge Donald E. Abram. Magistrate Judge Abram filed a Recommendation Of U.S. Magistrate Judge in which he recommended that Defendants Raymond Boyd And Joyce Boyd's Motion For Summary Judgment be granted and Plaintiff's Motion For Summary Judgment be denied.

The facts of this case are not in dispute. On May 18, 1984, the parties to this case entered into an agreement entitled "Settlement Agreement". Pursuant to this agreement, judgment was entered against Raymond Boyd and Joyce Boyd (the Boyds) and in favor of Agristor Credit Corporation (Agristor) in the amount of $139,000.00, in Civil Action No. 83 CV 27A, *Boyd, et al. v. A.O. Smith Harvestore Products, Inc., et al.* The settlement agreement also contained an assignment to Agristor of 80 percent of any settlement or judgment which the Boyds might obtain from the two remaining defendants in Civil Action No. 83 CV 27A. The Boyds filed for bankruptcy on July 1, 1986. On December 29, 1986, United States Bankruptcy Judge John McGrath entered an order which discharged all of the Boyds' debts. In 1991, the Boyds settled their claim against one of the defendant's in Civil Action No. 83 CV 27A. Agristor is now seeking a portion of those proceeds.

In his recommendation, the Magistrate Judge found that the Settlement Agreement created a debt to Agristor which was discharged in bankruptcy. In so

finding, the Magistrate rejected Agristor's argument that the Settlement agreement was an unlimited assignment of the Boyds' right of recovery in case 83 CV 27A. After a careful review of the disputed document, the Court agrees with the Magistrate Judge that the plain language used in the agreement clearly indicates that it was a settlement agreement, and therefore was dischargeable in bankruptcy. In addition, this Court determines that the express language of the Settlement Agreement terminated Agristor's right to 80 percent of the Boyds' recovery in case 83 CV 27A if such recovery was not made on or before November 18, 1985. Thus, Agristor has no claim to settlement proceeds recovered by the Boyds in 1991.

Plaintiff filed an objection to the recommendation on January 15, 1993. The Court is required to review *de novo* all portions of the Magistrate's recommendation to which objections have been filed. *See* 28 U.S.C. § 636(b). The Court has done so, and finds plaintiff's objections to be without merit. The Court has considered carefully the recommendation of the Magistrate Judge, plaintiff's objections, and the applicable case law. The Court is satisfied that the Magistrate's recommendation is correct and hereby accepts and adopts the Magistrate's findings and recommendation. Therefore, it is

ORDERED that Defendants Raymond Boyd and Joyce Boyd's Motion For Summary Judgment is granted. It is

FURTHER ORDERED that Plaintiff's Motion For Summary Judgment is denied. It is

FURTHER ORDERED that the Complaint and cause of action are dismissed with prejudice.

## RECOMMENDATION OF U.S. MAGISTRATE JUDGE

ABRAM, United States Magistrate Judge.

The matter which comes before this court is in regard to Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 72.1A and 72.3 of the Local Rules of Practice of the United States District Court for the District of Colorado, this matter has been referred to Magistrate Judge Donald E. Abram. Magistrate Judge Abram hereby makes the following recommendation.

### FACTS

Both sides admit the facts are undisputed. In September 1978 and 1979 Defendants Raymond and Joyce Boyd ("the Boyds") purchased silos manufactured by A.O. Smith Harvestore Products, Inc. The silos failed to meet the specifications needed by the Boyds, and the resulting spoilage of corn prompted a 1983 products liability suit. The Morgan County action by the Boyds named the manufacturer, the distributor (Big Horn Harvestore Systems, Inc.), and the "financing arm" of A.O. Smith Harvestore, AgriStor Credit Corporation ("AgriStor") as defendants.

On May 18, 1984, the Boyds and AgriStor signed a Settlement Agreement which read, in part:

> 1. Judgment shall be entered in favor of AgriStor and against the Plaintiffs, in *Boyd, et al. v. A.O. Harvestore Products, Inc., et al.,* jointly and severally, in the amount of $139,000.00 which shall bear interest at the judgment rate from and after May 18, 1984.

> 2. Plaintiffs hereby agree to assign to AgriStor an amount equaling 80 percent of any net recovery (amount remaining after payment of costs and expenses of litigation and attorneys' fees) which Plaintiffs may obtain by way of settlement or judgment against Big Horn Harvestore Systems, Inc. and A.O. Smith Harvestore Products, Inc. Said amount shall not exceed $139,000 and shall be payable upon receipt of settlement or judgment proceeds. If 80 percent of the net recovery is less than $139,000.00, the difference between the net recovery and $139,000 shall be payable no later than twelve months after the date of settlement or judgment.

3. If Plaintiffs neither settle with, nor obtain judgment against Big Horn Harvestore Systems, Inc. or A.O. Smith Harvestore Products, Inc. by November 18, 1985, the amount due in paragraph 1 above shall be due and payable on November 18, 1985.

The Morgan County District Court therefore entered judgment against the Boyds and dismissed AgriStor from the case on March 1, 1985. No judgment was obtained nor settlement reached in the case by November 18, 1985. AgriStor did not execute its right to collect on the Settlement Agreement on that date or thereafter until this action was filed on June 3, 1992.

On July 1, 1986, the Boyds filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. A debt owed to AgriStor in the amount of $160,000.00, consisting of $139,000 plus estimated interest, was listed in Schedule A–3 filed with the United States Bankruptcy Court for the District of Colorado. AgriStor's address was incorrectly listed in Schedule A–3. The Boyds also disclosed the pending Morgan County action in the Statement of Financial Affairs for Debtor Not Engaged in Business but did not list the Morgan County verdict that was on appeal as an asset. The Trustee in Bankruptcy filed a Motion for Extension of Time to File Opening Brief with the Colorado Court of Appeals regarding the case. In it, she stated "this appeal may be an asset and needs to be evaluated."

Presumably pursuant to that evaluation, on October 7, 1986, the United States Bankruptcy Judge entered an Order of Abandonment, abandoning the Morgan County suit on appeal in the Colorado Court of Appeals. On July 21, 1986, the United States Trustee filed a "No Asset" Chapter 7 Notice. And on December 29, 1986, the United States Bankruptcy Judge entered an Order discharging all debts pursuant to Chapter 7.

In 1991, the Boyds settled their products liability claim against A.O. Smith Harvestore Products, Inc. AgriStor filed suit on June 3, 1992 seeking the portion of the settlement proceeds it feels it is owed, pursuant to the May 18, 1984 Settlement Agreement.

### MOTION FOR SUMMARY JUDGMENT

Granting summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir.1991); *Devery Implement Company v. J.I. Case Company*, 944 F.2d 724, 726 (10th Cir. 1991); *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 242 (10th Cir.1991); *Continental Casualty Co. v. P.D.C., Inc.*, 931 F.2d 1429, 1430 (10th Cir.1991). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

After the moving party has come forward with the motion showing no issue of fact for trial, the party resisting a summary judgment motion must "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his (pleadings), but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Donovan v. Gingerbread House*, 536 F.Supp. 627, 630 (D.Colo.1982), quoting *Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir.1979), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). The finding of no factual issue must be based upon the record as a whole. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356.

It is the nonmoving party's burden to show that there are genuine issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 320, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). The court must view the evidence and its rea-

sonable inferences in the light most favorable to the party who opposes the motion for summary judgment. *Palermo v. First National Bank and Trust Co.*, 894 F.2d 363, 365 (10th Cir.1990). Evidence that is merely colorable or not significantly probative is inadequate to withstand a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Redmon v. United States*, 934 F.2d at 1155. Immaterial factual disputes will not defeat a motion for summary judgment. *Palermo v. First National Bank and Trust Co.*, 894 F.2d at 366; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### ANALYSIS

In this case, both parties have filed for summary judgment. They claim that since no facts are in dispute, judgment will be proper as a matter of law once the legal issues are resolved.

After a review of the facts, it is clear that the Boyds' obligation under the settlement agreement came due at one of two dates. The agreement states that the amount of $139,000 "shall be due and payable" on November 18, 1986, if no settlement or judgment is reached by that date. The plain language of the agreement so unequivocally states that the payment was due on November 18 that it would be manifestly unreasonable to consider otherwise. For the sake of argument, though, one could conceivably envision circumstances that would indicate that the settlement amount became payable when the Boyds settled with Big Horn Harvestore Systems, Inc. and A.O. Smith Harvestore Products, Inc. in 1991.

However, either way the facts are read, the claim was discharged in the Boyds' bankruptcy proceeding. The Massachusetts District Court case of *L.F. Rothschild & Co., Inc. v. Angier*, 84 B.R. 274 (D.Mass. 1988) provides guidance on this issue. The Court in *Angier* stated that a subsequent state judgment may be voided by a bankruptcy charge, notwithstanding the Full Faith and Credit Statute. *Id.* The Court then quotes the Bankruptcy Code:

A discharge in any case under this title— (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged ... (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor ...

*Id. citing* 11 U.S.C. § 524(a).

The discharge relieves the debtor from all those debts that arose before the date of the order. The definition of "debt" in the Code is "liability on a claim." 11 U.S.C. § 101(11). And a "claim" is defined broadly, so that "all legal obligations to the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *L. F. Rothschild & Co., Inc. v. Angier*, 84 B.R. at 276, *quoting* H.Rep. No. 595, 95th Cong.2d Sess. 309, reprinted in 1978 U.S.Code, Cong. & Admin.News, 5787, 5963, 6266. A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id. quoting* 11 U.S.C. § 101(4)(A). The Court concluded saying, "This rule puts all creditors on an equal footing, and allows the debtor a fresh start by resolving, in one forum, all claims based upon its pre-petition conduct." *Id.* at 277.

In this case, no matter when the settlement amount was due, AgriStor had a claim: a right to payment, either fixed or contingent, depending on the subsequent judgment or settlement. Therefore, the Boyds owed a debt to Agristor, and the debt was certainly discharged in the bankruptcy. The Tenth Circuit has similarly held that contingent contractual obligations are "provable, allowable, and therefore dischargeable" in a bankruptcy proceeding. *Schaefer v. Smith*, 469 F.2d 1256, 1257 (10th Cir.1972). In that case, the plaintiffs sought to collect on an agreement that

guaranteed the repurchase of stock if a specified return had not materialized on the investment by a certain date. *Id.* The Boyds' situation is analogous. They had promised to pay a certain amount to Agri-Stor, to be determined by clear contingent events. This is a contingent contractual obligation that is dischargeable in bankruptcy. Therefore, in this case it was properly discharged.

Plaintiffs contend that the settlement agreement was an "assignment" of rights under the state products liability action, and as such was not dischargeable in bankruptcy. Such an assertion goes against the clear language of the agreement, the conduct of the Boyds, and the intent of the Bankruptcy Code.

Reading over the May 18, 1984 Settlement Agreement between the two parties, the words never lose their clarity. Words such as "payable upon receipt," "payable no later than" and "due and payable on" all point to the unmistakable conclusion that the agreement created a debt in return for the dismissal of all claims in the products liability action. The mere presence of the word "assignment" does not contradict the language of the rest of the document. It is clear to this Court by the language of the agreement that the parties intended to create a debt in return for the settlement of the claims against each other.

In his deposition, Defendant Mr. Boyd stated that he thought it was clear the agreement created a debt. (Raymond Boyd deposition, p. 24). Certainly by listing the obligation as a debt in Schedule A–3, the Boyds were indicating that to them the agreement was indeed a debt that was due, considering they had figured in interest of $21,000. Because of the actions of the Boyds, the conclusion that the Settlement Agreement created a debt grows stronger.

Finally, the intent of the Bankruptcy Code is to provide certainty, finality, and to get the debtors back on their feet. By treating the obligation as a debt and not an assignment, this Court is furthering the intent of the Code. The Tenth Circuit has stated that

While it is important in bankruptcy that estates be administered expeditiously and the assets distributed to creditors, it is equally important that effect be given to the purpose of the Act, "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from" the consequences of financial misfortunes. (citations omitted)

*Schaefer v. Smith,* 469 F.2d at 1258. The Court further goes on to state that a delay of even one year could "unduly delay the administration of the estate." *Id.* In this case, the delay has been much greater than one year; in fact, it now exceeds six years. Furthermore, the Third Circuit has stated that "In the bankruptcy context, the need for finality and certainty is especially acute. While we admitted that our result could grant the debtor an 'undeserved windfall' we pointed out that 'that is true of enforcement of all procedural rules.'" *Chrysler Motors Corp. v. Schneiderman,* 940 F.2d 911, 914 (3rd Cir.1991), *quoting Taylor v. Freeland & Krontz,* 938 F.2d 420, 426 (3rd Cir.1991). Undoubtedly, undoing the bankruptcy court's order here would not only obviate the court's attempt to allow the Boyds to start anew, free from their financial misfortunes, but it would also destroy any degree of finality and certainty that the proceeding had given.

Plaintiff's final argument apparently rests on the premise that AgriStor was not given notice that it was listed as a creditor of the Boyds. In the brief, Plaintiff states that its address on Schedule A–3 was incorrect and that the Order of Abandonment "reflected that notice had been given to all parties." The Court is presumably supposed to conclude that AgriStor was not notified of the proceeding. Plaintiff does not state unequivocally that they did not know of the bankruptcy proceeding or that they did not receive the notice. Nor does Plaintiff explain what their address was when they had an office in Denver or how the address could possibly have been listed incorrectly.

A schedule that lists a creditor's address, even though incorrectly, is prima facie

sufficient for the purpose of a discharge and the creditor has the burden to show that his particular debt should not be discharged, although the very presence of factual error is enough to put the bankrupt to his defense to show to the Court what efforts he made to assure its accuracy.

*King v. Harry*, 131 F.Supp. 252, 254–55 (D.D.C.1955). In this case, there is no evidence that Plaintiffs were not aware of the bankruptcy proceeding. There is no evidence that the notice was not delivered to Plaintiff or returned to the Trustee. Plaintiff does not contend that Defendants knew of the proper address and intentionally misrepresented it, nor does Plaintiff contend that Defendants did not use "due diligence" to find the correct mailing address, as required by law. *In re Vega*, 15 B.R. 174, 176 (W.D.Okla.1981). Therefore, the discharge of the Boyds' debts is effective, and the abandonment of the Morgan County appeal is likewise effectual.

A Chapter 7 discharge is ineffective only against creditors not scheduled or listed. 11 U.S.C. § 523(a)(3); *L.F. Rothschild & Co., Inc. v. Angier*, 84 B.R. 274, 277 (D.Mass.1988). In cases where the creditor received notice late because of the debtor's negligence in misaddressing the notice, the courts have held that the creditor is entitled to proper notice. *In re STN Enterprises, Inc.*, 94 B.R. 329, 333 (D.Vt.1988); *In re Robintech, Inc.*, 69 B.R. 663 (N.D.Tex.1987). In this case, however, Plaintiff waited over five years before bringing this action. Plaintiff knew about the bankruptcy proceeding and did not contest it. Furthermore, Plaintiff failed to show any interest until Defendants had started back on the road to recovery. It is clear that AgriStor had little problem with the bankruptcy proceeding until the Boyds settled the Morgan County matter, giving Plaintiff reason to institute suit.

Plaintiff further argues that because the potential verdict was not listed as an asset by the Boyds and the Trustee elected to abandon its interest in the proceeding, that their argument would have persuaded the Trustee to maintain an interest. This is not true. The Trustee knew of the action, its verdict, and that it was on appeal. The Trustee even filed a Motion for Extension of Time to file an Opening Brief with the Colorado Court of Appeals. She knew the appeal "may be an asset in the bankruptcy case," and she stated that she "requested the evaluation of the merits of the case by several lawyers." Presumably after the evaluations, the Trustee decided to abandon any interest in the appeal. This Court will not disturb the Trustee's deliberate, researched and therefore reasonable decision on that issue.

## CONCLUSION

Since the Settlement Agreement created a debt owed to AgriStor by the Boyds and not an assignment of proceeds from the products liability action and because the intent of the Bankruptcy Code is to provide finality, certainty and to allow the debtors to get back on their feet as quickly as possible, the debt was properly discharged in the Boyds' bankruptcy. And because of that discharge, Plaintiffs have no claim here. Based on the record as a whole, this Court concludes that no genuine issues of fact exist, and the Defendants are entitled to summary judgment as a matter of law.

IT IS THEREFORE RECOMMENDED that Defendants' Motion for Summary Judgment be hereby GRANTED.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion for Summary Judgment be hereby DENIED.

FURTHER, IT IS ORDERED that pursuant to Rules 72.1 and 72.3 of the Local Rules of Practice of the United States District Court for the District of Colorado, the parties herein shall have ten (10) days after service hereof to serve and file written, specific objections hereto. If no such objections are timely filed, the Magistrate's proposed findings and recommendations may be accepted by the District Judge and appropriate orders entered without further notice.

DATED at Denver, Colorado this <u>22nd</u> day of <u>December,</u> 1992.